Robert G. TAYLOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A04–9301–CR–1.

Court of Appeals of Indiana, Fourth District.

June 21, 1993.

---

Geoffrey A. Rivers, Muncie, for appellant-defendant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Robert G. Taylor appeals his convictions for maintaining a common nuisance, a class A misdemeanor, and possession of cocaine, a class D felony. IND.CODE 35–48–4–13; IC 35–48–4–6.

We affirm.

Taylor presents several issues for our review, which we restate as:

 1. whether the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant;

 2. whether the trial court abused its discretion in overruling his objection to the State's use of a peremptory challenge; and

 3. whether the court erred in admitting testimony concerning a prior uncharged crime.

On the evening of March 9, 1992, Officer Jess Neal of the Muncie/Delaware County Drug Task Force made arrangements with two police informants, J.D. and J.R., to purchase drugs. J.R. took Officer Neal to an apartment in Muncie leased by Taylor. Officer Neal and the other two were greeted at the door and allowed inside. Once inside, J.R. told Taylor he needed some "stuff." Taylor motioned J.R. to another area at the rear of the apartment, and a woman asked Officer Neal to wait outside. Officer Neal objected, but eventually he left. In a few minutes, J.R. and J.D. returned to the car where Officer Neal was waiting and gave him a plastic bag containing cocaine.

Officer Neal relayed the information to Captain Jerry Cook and Patrolman Mark Craig of the Delaware County Sheriff's Department. Craig then prepared a proba-

ble cause affidavit based on the information. Officers Cook and Craig then filed it with the Delaware Superior Court. A search warrant was issued at 8:10 p.m. that evening.

Meanwhile, Officer Neal met again with J.R. and made plans to purchase additional cocaine at Taylor's apartment. Even though Officer Neal knew the apartment would be searched, he wanted to appear surprised so J.R. would work with him again.

Officers Cook and other members of the Drug Task Force executed the search warrant at approximately 8:30 p.m. and found cocaine, marijuana, and various drug paraphernalia in the apartment. The officers arrested Taylor and others inside the apartment and seized drugs and related items.

The State charged Taylor by information with possession of cocaine and maintaining a common nuisance. After a trial, a jury found Taylor guilty as charged. The court sentenced him to concurrent terms of 18 months for possession of cocaine and one year for maintaining a common nuisance. It then suspended the sentences and placed him on probation.

Taylor contends the evidence seized during the search was inadmissible because the probable cause affidavit was defective in several aspects. He claims the warrant did not specifically describe the place to be searched and does not specifically state Taylor lived at that address. Taylor cites *State v. Phipps* (1924), 194 Ind. 459, 143 N.E. 287, as holding a warrant is deficient if it does not specify the defendant was the occupant of the premises.

█ A search warrant must strictly comply with the constitutional and statutory law permitting a search and seizure. *Williams v. State* (1988), Ind., 528 N.E.2d 496, 497, *trans. denied.* IC 35–33–5–2(a) provides no warrant for search or arrest shall be issued until there is filed with a judge an affidavit particularly describing the place to be searched and things to be searched for.

█ In this case the only information presented to the judge was that contained in the affidavit. Therefore, there must be sufficient factual information on the face of the affidavit from which a neutral and detached magistrate or judge could have reasonably concluded that probable cause existed for the issuance of a search warrant. *Kail v. State* (1988), Ind.App., 528 N.E.2d 799, 806, *trans. denied.* Probable cause to issue a search warrant requires neither a *prima facie* showing of criminal conduct nor a demonstration the contraband will be found on the premises to be searched. *Beverly v. State* (1989), Ind., 543 N.E.2d 1111, 1114. The circumstances alleged in the affidavit need only lead a person of reasonable caution to believe a crime had been committed. *Chambers v. State* (1989), Ind., 540 N.E.2d 600, 601.

█ In *Phipps*, 143 N.E. 287, our supreme court stated a warrant describing the place to be searched as the residence of a person named, located in a certain township, town, or on a designated tract of land in a specified county and state is sufficiently particular. Here, the warrant is not defective under the standards set out in *Phipps*. It expressly states the place to be searched is 601 E. First Street, downstairs on the south side of East First Street, east of Monroe Street in Muncie, Indiana, which is listed as the residence of Robert Taylor. This is an adequate description of the place to be searched even though it does not contain the words "Robert G. Taylor lives there."

Taylor next attacks the validity of the probable cause affidavit. He alleges several fatal flaws. He claims: (1) the attesting officer did not have personal knowledge of the facts and did not establish the credibility of his informant; (2) the affidavit is based on hearsay since it was Officer Craig who signed the affidavit while it was Officer Neal who purchased the cocaine; (3) the officers relied on the fact that the Drug Task Force had received various calls concerning this residence; and (4) Officer Craig's information was stale.

█ Taylor's arguments are without merit. After the informant told Officer Craig about the presence of cocaine at Tay-

lor's apartment, he, along with Officer Neal and other members of the Drug Task Force, proceeded to verify the information. Officer Neal purchased cocaine from Taylor's apartment. The credibility of an informant in a probable cause affidavit is not required where, as here, a warrant is based on a police officer's personal observations. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090, 1097. Furthermore, as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant. *Utley v. State* (1992), Ind., 589 N.E.2d 232, 237, *cert. denied* — U.S. ——, 113 S.Ct. 991, 122 L.Ed.2d 142. Thus, Officer Neal's knowledge of drug sales can be imputed to Officer Craig. It also was not error to consider the phone calls to the Task Force from interested neighbors complaining about the activities at Taylor's apartment. Any information was personally corroborated by Officer Neal's personal knowledge. This substantially reduces the chances such complaints were reckless tales. *See U.S. v. Harris* (1971), 403 U.S. 573, 580–581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723. Lastly, while a search warrant based on stale information only gives rise to the mere suspicion a crime has been committed, clearly the information here was not stale. Officer Neal purchased cocaine at Taylor's apartment at 6:00 p.m., and the warrant was executed approximately two and one half hours later. *See Raymer v. State* (1985), Ind., 482 N.E.2d 253, 255 (approving a three day interval between obtaining facts and issuance of search warrant).

Based on these facts, along with the rational and reasonable inferences to be drawn therefrom, an adequate basis for finding probable cause existed, and the judge had a substantial basis for concluding cocaine and other contraband were present in Taylor's apartment. The trial court did not err in denying the motion to suppress evidence.

Taylor next contends the trial court erred in overruling his objection to the State's use of a peremptory challenge which excluded the only black person on the jury venire. He claims the State purposely excluded the juror based on her race.

 Purposeful racial discrimination in the selection of a jury violates a defendant's right to equal protection. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; *Minniefield v. State* (1989), Ind., 539 N.E.2d 464, 466, *reh. denied.* To establish a *prima facie* case of purposeful discrimination, a defendant must demonstrate: (1) he is a member of a cognizable racial group; (2) the prosecutor has peremptorily challenged a member of the defendant's race; and (3) these facts and other relevant circumstances raise an inference the challenges were made because of race. *Sylvester v. State* (1990), Ind., 549 N.E.2d 37, 41, *reh. denied.* Once a defendant establishes a *prima facie* case of purposeful discrimination, the burden then shifts to the prosecution to come forward with race-neutral reasons for the peremptory challenges. *Evans v. State* (1991), Ind.App., 566 N.E.2d 1037, 1040. These reasons need not rise to the level necessary for a challenge for cause. *Holifield v. State* (1991), Ind., 572 N.E.2d 490, 493, *reh. denied.* The trial court then has the duty to determine if purposeful discrimination was established, and the trial court's determination is given great deference on appeal. *Atkins v. State* (1990), Ind.App., 561 N.E.2d 797, 800, *trans. denied.*

 While Taylor has established the first two prongs of the test set out in *Sylvester*, he has failed to present evidence to establish purposeful discrimination. The record indicates the State used peremptory challenges on other than black jurors. The removal of black jurors by the use of peremptories does not, by itself, raise an inference of racial discrimination. *Sutton v. State* (1990), Ind.App., 562 N.E.2d 1310, 1313, *reh. denied,* — U.S. ——, 112 S.Ct. 598, 116 L.Ed.2d 621.

However, although Taylor has failed to establish a *prima facie* case of purposeful racial discrimination, we will address the reason the State gave for challenging the

juror since the challenge resulted in the jury having no members of the defendant's race on it. The State gave several reasons for peremptorily challenging the juror. First, from the way in which the juror answered questions, the prosecutor felt the juror had some reservations about voting to convict a person and, in fact, the juror stated she would find it difficult to sit in judgment of another person. The juror also admitted she knows J.R.'s family. These are valid race-neutral reasons for exercising a peremptory challenge. The trial court did not err in overruling Taylor's objection.

Taylor contends the trial court erred in admitting evidence of prior uncharged crimes. Over Taylor's objection, Officer Neal was allowed to tell the jury about the cocaine purchase he and J.R. made at his apartment earlier that evening. The State offered the evidence under the theory of *res gestae*, claiming it completed the story of the charged offense by providing its immediate context.

■■■■ Evidence of extrinsic criminal conduct is generally inadmissible if its sole relevance is to show the defendant's character is bad and he therefore has a tendency to commit crimes. *Street v. State* (1991), Ind.App., 567 N.E.2d 1180, 1183, *trans. denied.*[1] However, evidence of uncharged misconduct may be admissible if it promotes a legitimate inference about some issue in the cause, such as intent, motive, purpose, identification, plan, knowledge, or absence of mistake, notwithstanding its incidental revelation about the defendant's character. *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808. Additionally, the probative value of such evidence must substantially outweigh its prejudicial effect. *Paulson v. State* (1979), 181 Ind.App. 559, 393 N.E.2d 211, 212.

■■■■ *Res gestae* evidence is not an exception to the general rule prohibiting proof of other crimes to show a propensity to engage in criminal conduct. Such evidence is offered to prove and explain the occurrence of a specific, charged crime. *Street,* 567 N.E.2d at 1184, n. 6. It includes crimes committed as part of the same transaction as the crime charged or as part of an uninterrupted series of events. *Wilson v. State* (1986), Ind., 491 N.E.2d 537, 538. Admission of evidence as part of the *res gestae* is within the discretion of the trial court. *Id.*

■■■■ Here, however, admission of such evidence as part of the *res gestae* was erroneous. The earlier drug purchase was a transaction complete within itself. Taylor was charged with possession of cocaine and maintaining a common nuisance. Evidence of a cocaine sale at that apartment earlier that day is not so closely related to the charged crimes as to be of the same transaction. Nonetheless, the trial court's error on this score was harmless, *see* Ind.Trial Rule 61; Ind.Appellate Rule 15(E).

■■■■ We will affirm the trial court's judgment, even if entered for the wrong reasons, if the judgment can be sustained on any theory consistent with the evidence presented. *Day v. State* (1990), Ind., 560 N.E.2d 641, 643; *City of Indianapolis v. Fields* (1987), Ind.App., 506 N.E.2d 1128, *reh. denied; First Bank of Madison v. Bank of Versailles* (1983), Ind.App., 451 N.E.2d 79. It does not matter if the trial court's stated reasons for its ruling are incorrect or even absent. As long as the decision itself is correct, we will uphold it. *Reaves v. State* (1992), Ind., 586 N.E.2d 847, 857.

In the instant case, Taylor's sole defense was he did not know drugs were in the apartment. He relied on this defense in opening argument and when he testified. He stated on the day in question he went to

---

**1.** Our Supreme Court recently formally adopted Federal Rule of Evidence 404(b) and F.R.E. 403. Under F.R.E. 404(b), evidence of uncharged misconduct is not admissible to prove the character of a person. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowl-

edge, identity, or absence of mistake or accident. *Lannan v. State* (1992), Ind., 600 N.E.2d 1334. F.R.E. 403 requires the exclusion of admissible evidence if its prejudicial impact outweighs its probative value. *Hardin v. State* (1993), Ind., 611 N.E.2d 123.

bed after he came home from work because he was sick. He had friends living with him, and vaguely remembered some people visiting the apartment. However, he did not see any cocaine or marijuana. The State bears the burden of showing Taylor knowingly possessed cocaine and maintained a place where drugs were kept and used. Therefore, his knowledge of the drugs in his apartment was at issue, and evidence Taylor was involved in a drug sale two hours earlier than the charged crime makes it more probable that he knew drugs were in the apartment.

 Balancing the prejudicial impact of such evidence with its probative value, we conclude its probative value outweighs its prejudicial impact. Such evidence was not admitted to prove Taylor's propensity to possess cocaine. That it did incidentally is of no moment here, given the State's need to prove Taylor's knowledge drugs were in the apartment at the time the charged crime was committed.[2] Because the probative value of this evidence substantially outweighs the danger of unfair prejudice, the trial court did not err by incidentally showing evidence of Taylor's prior crime.

Affirmed.

MILLER and BARTEAU, JJ., concur.

---

**2.** Also, the trial court instructed the jury this evidence was not to be used as proof of the charged crimes. The jury is presumed to have

followed this instruction. *Duncanson v. State* (1987), Ind., 509 N.E.2d 182, 186.