STATE of Indiana, Appellant–Plaintiff,

v.

Timothy R. FARBER, Appellee–Defendant.

No. 82A05–9509–CR–372.

Court of Appeals of Indiana.

March 26, 1997.

Transfer Denied June 30, 1997.

Pamela Carter, Attorney General, Janet L. Parsanko, Deputy Attorney General, Indianapolis, for Appellant–Plaintiff.

Allen R. Hamilton, Evansville, for Appellee–Defendant.

## OPINION

RUCKER, Judge.

Appellee–Defendant Timothy R. Farber filed a motion to suppress the evidence which the trial court granted. In this interlocutory appeal the State challenges the trial court's ruling. We address the following issues: 1) does the "fruit of the poisonous tree" doctrine require the exclusion of evidence derived from conversations protected by the statutory spousal privilege; 2) was Farber's confession given knowingly and voluntarily; and 3) did the trial court err in suppressing evidence recovered from the home of Far-

ber's acquaintance. We affirm in part and reverse in part.

The record shows that on March 1, 1995 officers of the Evansville police department were summoned to an apartment building in connection with the stabbing death of Brian Lee Russell. Russell's body was found on the floor punctured with several stab wounds, telephone lines inside Russell's apartment had been severed, and two rings which Russell usually wore were missing. Farber, one of Russell's former employees, was among the initial suspects in the crime. During their investigation officers questioned Farber's wife who informed them that she suspected Farber was involved with Russell's death. Farber's wife agreed to wear a concealed body wire and to talk with Farber about the stabbing while officers would listen to the conversation. The plan proceeded accordingly. Farber and his wife sat in her car engaging in conversation during which Farber made several incriminating admissions. Approximately thirty minutes into the conversation, officers approached the car and asked Farber to accompany them to the police station. Farber complied. At the station Detective Guy Minnis advised Farber of his *Miranda* rights which Farber acknowledged and signed a waiver thereof. Thereafter Detective Minnis questioned Farber for several minutes and then accused him of killing Russell. Farber initially denied the accusation. The officer then advised Farber that his wife had implicated him in the crime, that she had been wearing a concealed wire earlier that day, and that officers had listened to the conversation. After a brief silence Farber admitted stabbing Russell with a knife and provided Detective Minnis with details of the alleged crime. Farber told the officer that he had thrown the knife into a lake along with a coffee can in which he had placed Russell's keys, wallet, and a towel Farber had used to wipe his bloody hands. He admitted removing two rings from Russell's home, one of which he had taken to a local pawn shop. In addition Farber told Detective Minnis that a pair of shoes and brown jacket that he was wearing on the

night of the stabbing contained blood stains. He advised the officer that the clothing was inside either a duffel bag, suitcase, or plastic bag which could be found at the home of an acquaintance, Anthony Thompson. After obtaining Farber's consent officers seized Farber's baggage and without a warrant searched the contents. Officers also recovered the knife and coffee can from the lake.

Ultimately Farber was charged by information with one count of murder[1] and one count of robbery as a Class A felony.[2] Thereafter he filed a motion to suppress the evidence upon which a hearing was conducted. The trial court granted the motion in part concluding that the recorded conversation between Farber and his wife was privileged pursuant to I.C. § 34–1–14–5(5) and thus could not be introduced at trial. Relying on the "fruit of the poisonous tree" doctrine the trial court also determined that neither Farber's confession nor any physical evidence seized as a result thereof could be introduced as evidence at trial. In addition the trial court determined that the warrantless search of Farber's duffel bag, suitcase, and a plastic bag was unconstitutional. Ultimately the trial court suppressed the following items: (1) the audio-taped conversation between Farber and his wife and any testimony regarding the contents of the recorded statement, (2) Farber's confession to police, (3) all physical evidence recovered from the lake, (4) Farber's clothing, and (5) blood test results performed on the clothing. This interlocutory appeal ensued in due course.

## I.

The State contends the trial court erred in granting Farber's motion to suppress. According to the State the "fruit of the poisonous tree" doctrine does not require the exclusion of evidence obtained as a result of a conversation protected by a statutory spousal privilege. The State bears the burden of demonstrating the constitutionality of the measures it uses in securing information. *State v. Ashley,* 661 N.E.2d 1208, 1211 (Ind. Ct.App.1995). On appeal from the grant of a motion to suppress the State appeals from a

---

**1.** Ind.Code § 35–42–1–1.

**2.** Ind.Code § 35–42–5–1.

negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. *Id.; State v. Smith,* 638 N.E.2d 1353, 1355 (Ind.Ct.App.1994), *reh'g denied.* We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Ashley,* 661 N.E.2d at 1211. We neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

■ Indiana Code § 34-1-14-5 provides in pertinent part as follows:

Except as otherwise provided by statute, the following persons shall not be competent witnesses:

* * *

(5) Husband and wife, as to communications made to each other.

Although the statute is phrased in terms of competency, the provision has been interpreted as affording a privilege subject to certain exceptions as well as waiver by the communicating spouse. *Kindred v. State,* 524 N.E.2d 279, 295 (Ind.1988); *Hazelwood v. State,* 609 N.E.2d 10, 15 (Ind.Ct.App.1993), *trans. denied.* In addition, although the statute does not include the term "confidential," the privilege encompasses only confidential communications and information gained by reason of the marital relationship. *Barajas v. State,* 627 N.E.2d 437, 439 (Ind.1994) quoting *Lane v. State,* 266 Ind. 485, 364 N.E.2d 756 (1977); *State v. Roach,* 669 N.E.2d 1009, 1011 (Ind.Ct.App.1996). Only those communications passing from one marriage partner to the other because of the confidence resulting from their intimate marriage relationship are protected by the spousal communications privilege. *Rode v. State,* 524 N.E.2d 797, 799 (Ind.Ct.App.1988), *trans. denied.*

■ The State concedes that pursuant to the spousal privilege, the trial court properly suppressed the audio-taped conversation between Farber and his wife, as well as any testimony by the wife regarding her private communications with Farber. However the State contends that the trial court erred in suppressing Farber's confession and all evidence obtained as a result of that confession. According to the State the constitutional considerations giving rise to the "fruit of the poisonous tree" doctrine do not apply because the audio-taped conversation was secured in the absence of police misconduct.

■ The "fruit of the poisonous tree" doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures. *See C.D.T. v. State,* 653 N.E.2d 1041, 1044-45 (Ind.Ct.App.1995) quoting *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *reh'g denied; Mundt v. State,* 612 N.E.2d 566, 567, n. 1 (Ind.Ct.App.1993), *trans. denied.* When applied, the doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. *Wong Sun v. United States,* 371 U.S. 471, 484-85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Jackson v. State,* 669 N.E.2d 744, 750 (Ind.Ct.App.1996); *Herald v. State,* 511 N.E.2d 5, 8 (Ind.Ct.App.1987), *trans. denied.* To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights. *New York v. Harris,* 495 U.S. 14, 19, 110 S.Ct. 1640, 1644, 109 L.Ed.2d 13 (1990); J. Strong, *McCormick on Evidence* § 176 (4th ed. 1992). Stated differently, the defendant must show that the search or seizure was illegal in the first instance. Where there is no illegal search or seizure, there can be no "fruit of the poisonous tree." *Deckard v. State,* 670 N.E.2d 1, 6 (Ind.1996); *Troyer v. State,* 605 N.E.2d 1183, 1185 (Ind.Ct.App.1993), *trans. denied.*

In this case Farber's conversation with his wife was surreptitiously recorded and monitored by the police with the wife's consent. Because of the spousal privilege, which Farber did not waive, there is no question that the conversation cannot be used as evidence at trial. However, the fact that the conversation is excluded as evidence based on a statutory privilege does not automatically mean that officers acted illegally in obtaining

the evidence. In terms of the alleged illegality of secretly recorded conversations, the case before us is no different than those involving police informants. And the law is clear that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with an informant are electronically monitored by a government agent with the consent of the informant. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), *reh'g denied; Lawhorn v. State,* 452 N.E.2d 915, 918–19 (Ind.1983). As our supreme court observed "the Fourth Amendment provides no protection to the wrongdoer who mistakenly believes that a person to whom he voluntarily confides his wrongdoings will not reveal it." *Snellgrove v. State,* 569 N.E.2d 337, 339–40 (Ind.1991) *citing Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), *reh'g denied; See also Fozzard v. State,* 518 N.E.2d 789, 791–92 (Ind.1988) (informant's electronic recording of defendant's conversation did not invade the defendant's constitutionally justifiable expectation of privacy). We apply the same rationale here. Under the spousal privilege provisions of Ind.Code § 34–1–14–5 the trial court properly suppressed as evidence the audio-taped conversation between Farber and his wife and any testimony regarding the contents of the recorded statement. However there was no Fourth Amendment violation in recording the conversation. Thus, there was no poisonous tree from which a fruit could grow. *See Deckard,* 670 N.E.2d at 6. The trial court erred by suppressing Farber's confession to police and the physical evidence recovered from the lake based on the "fruit of the poisonous tree" doctrine.

## II.

▮ The trial court also suppressed Farber's confession on grounds that it was given involuntarily. Specifically the trial court determined:

It could be reasonably expected to be emotionally devastating to a husband upon learning of his wife's betrayal of her marital trust—particularly, after she had, only a brief time earlier, re-affirmed her trust to him. Under the totality of the circumstances leading up to the questioning of the Defendant, it is difficult to conclude that statements were made free of undue psychological influences.

*R.* at 51. Even assuming Farber may have been devastated by the officer's revelation, that fact alone does not mean that Farber's confession was involuntary. *See Mays v. State,* 469 N.E.2d 1161, 1165 (Ind.1984) (confrontation with incriminating evidence does not amount to coercion or render a confession thereby inadmissible); *Ward v. State,* 408 N.E.2d 140, 143 (Ind.Ct.App.1980) (even where police falsely tell the defendant that his accomplice has incriminated him, the deceptive statement is insufficient to render confession inadmissible). In determining whether a confession is involuntary and therefore inadmissible, we consider the totality of the circumstances, based on a review of the entire record. *Lynch v. State,* 632 N.E.2d 341, 343 (Ind.1994). The inquiry focuses on whether the defendant's capacity for self-determination has been critically impaired, and whether alleged coercive police activity overbore the defendant's will. *Id.* quoting *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

There is nothing in the record before us demonstrating that Farber's capacity for self-determination had been critically impaired, or that the officers' activity was impermissibly coercive thereby overbearing Farber's will. During questioning, Detective Minnis' manner was polite and unoffensive, and his tone of voice calm. The officer advised Farber that it would be beneficial for him to tell the truth and encouraged Farber to give his version of the story. There was no use of threat, force, promises, or other improper influences. The trial court's determination that Farber's confession should be suppressed on involuntariness grounds is erroneous.

## III.

▮ The State next contends the trial court erred in suppressing as evidence Farber's clothing and blood test results performed on the clothing. As a part of his confession Farber told Detective Minnis that there was blood on the shoes he was wearing

the night of the offense as well as blood on a brown coat that he was wearing. Farber also told the officer that the clothing was inside either a suitcase, a duffel bag, or plastic bag that could be found at the home of an acquaintance, Anthony Thompson. Farber provided the police with the exact location in the home where his baggage could be found. He also gave Detective Minnis written and verbal consent to search for the items. The trial court entered an order suppressing the evidence seized reasoning (1) police did not obtain a search warrant to search Farber's property, (2) Farber did not knowingly or voluntarily waive his right to have police obtain a search warrant, and (3) the written consent form as well as Farber's verbal consent were suppressed within the context of Farber's confession. In reaching its conclusion the trial court indicated that although Farber may have given his consent to retrieve baggage from the Thompson home "he never specifically stated that they may 'break the close' of the duffle bag, suitcase, and plastic bags...." *R.* at 54.

■ Generally a search warrant is a prerequisite to a constitutionally proper search and seizure. *Perry v. State*, 638 N.E.2d 1236 (Ind.1994). In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Short v. State*, 443 N.E.2d 298 (Ind.1982). A valid consent to search is an exception to the warrant requirement. *Perry*, 638 N.E.2d at 1240. In turn, a consent to search is valid except where procured by fraud, duress, fear, or intimidation or when it is merely a submission to the supremacy of the law. *Rivera v. State*, 667 N.E.2d 764, 766 (Ind.Ct.App.1996), *trans. denied.*

Farber's consent to search was given after he had confessed to stabbing Russell, after he told police where he had thrown the knife used in the stabbing, and after telling police where his bloody clothes could be found. We have already determined that Farber's confession was not the product of improper police conduct. Because Farber's consent to search was given as part of the confession, it also was not the product of improper police conduct. Further, even if we viewed the consent to search as separate from the con-

fession itself, still nothing in the record shows that the police intimidated Farber or engaged in fraud to procure his consent. Nor does the record show that Farber was under duress, motivated by fear, or gave his consent out of submission to the supremacy of law. As for the trial court's determination that although Farber may have given his consent to retrieve baggage from the Thompson home he never specifically gave police the authority to search the baggage, we disagree. The record shows that before Farber signed the consent form the following dialogue occurred:

> Detective Minnis: "Now you're giving us permission to go over there to the Anthony Thompson residence and collect anything that belongs to...."
>
> Farber: "And collect anything that belongs to me."

*R.* at 79. In the context of Farber telling police that the bloody clothing was inside his baggage and that the baggage could be found at the home of an acquaintance, we do not believe it logical that Farber's consent to search somehow limited police to taking possession of the baggage without confirming what Farber had told them about the clothing inside. Farber's consent to search was valid and gave officers the authority to seize the baggage as well as to search its contents.

We conclude the trial court correctly suppressed Farber's conversation with his wife but erred in suppressing Farber's confession to police, the physical evidence recovered from the lake, Farber's clothing, and test results performed on the clothing. The judgment of the trial court is therefore affirmed in part and reversed in part.

BARTEAU and NAJAM, JJ., concur.