Ronald OMAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A03–9808–CR–365.

Court of Appeals of Indiana.

March 23, 1999.

Donald W. Pagos, Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, Michigan City, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Defendant–Appellant Ronald Oman ("Oman") appeals the trial court's denial of his motion to suppress certain evidence obtained pursuant to a prosecutor-issued subpoena duces tecum.

We reverse.

### ISSUES

Oman raises several issues regarding the admissibility of his drug test results. We restate and review two of those issues:

1. Whether probable cause is required before a prosecutor may issue a subpoena duces tecum, and, if so, whether hearsay satisfies that requirement.

2. Whether the subpoena duces tecum in this case was reasonable.

We also raise one issue sua sponte: whether the results of a compulsory employee drug test, obtained pursuant to a government-employer's workplace drug testing policy, may be used in the criminal prosecution of an employee.

### FACTS AND PROCEDURAL HISTORY

Oman is a firefighter employed by the city of Michigan City, Indiana. Michigan City has in place a Drug and Alcohol Free Workplace Ordinance ("Ordinance"), the text of which states it exists in compliance with the federal Drug–Free Workplace Act, 41 USC 701. The Ordinance provides that upon certain events, employees must submit to a urine test and a breath test to screen for illegal substances and alcohol. Refusal to submit results in an automatic thirty day suspension without pay and risk of termination. The Ordinance includes a confidentiality provision which states that test results will be maintained only in the employee's confidential file; the testing lab will not maintain results. In addition, the Ordinance provides that test results cannot be disclosed to individuals outside the department hierarchy without the employee's written consent except under certain circumstances, one of which includes when disclosure is compelled by law or by judicial and administrative process.

On April 28, 1998, Oman was the driver of one of two fire trucks that collided en route to a fire call. As per the Ordinance, both drivers were driven from the scene to the testing lab for drug testing. Police did not

interview Oman at the scene, did not perform any field sobriety tests, and did not request any drug testing of the drivers.

That evening, Police Officer Kunkle heard from the Assistant Chief of Police that the Assistant Chief had heard from an unidentified source that Oman's drug tests were positive. Based on this information, Officer Kunkle asked the deputy prosecutor to issue a subpoena to obtain Oman's test results. The deputy prosecutor issued a subpoena duces tecum directing the testing lab to produce Oman's test results. The lab complied, and the results revealed that Oman had tested positive for marijuana. He was charged with operating a vehicle with a controlled substance in his blood, a Class C misdemeanor. Ind.Code § 9–30–5–1. Oman moved to suppress his test results. The trial court denied his motion and certified the issue for interlocutory appeal.

## DISCUSSION AND DECISION
### I. Probable Cause

Oman sought to suppress his drug test results by challenging the legality of the prosecutor-issued subpoena duces tecum. We therefore begin our discussion there. Ind.Code § 33–14–1–3 states in part:

> Sec. 3. Whenever any prosecuting or district attorney shall receive information of the commission of any felony or such district attorney of the commission of any misdemeanor he shall cause process to issue from a court having jurisdiction to issue the same, (except the circuit court,) to the proper officer, directing him to subpoena the persons therein named likely to be acquainted with the commission of such felony or misdemeanor, and shall examine any person so subpoenaed before such court touching such offense. . . .

In *State ex rel. Pollard v. Criminal Court of Marion County,* our supreme court stated:

> The fourth amendment requirement of 'probable cause, supported by oath or affirmation' is literally applicable only to warrants. Nevertheless, fourth amendment requirements of probable cause have been interpreted as applicable to subpoenas duces tecum to the extent that the grand jury or the prosecutor in issuing such sub-

poenas may not act arbitrarily or in excess of their statutory authority.

263 Ind. 236, 329 N.E.2d 573, 586 (1975). This court reaffirmed the applicability of probable cause to subpoenas duces tecum in *In re Thompson,* 479 N.E.2d 1344, 1346 (Ind. Ct.App.1985).

█ Applying this standard to Ind.Code § 33–14–1–3, we note that the statute grants the prosecutor the authority to issue subpoenas upon "receiv[ing] information" that a crime has been committed. In the present case, the prosecutor issued a subpoena duces tecum based on Officer Kunkle's representations that Kunkle had heard from his assistant chief, who had heard it from somewhere else, that Oman's drug test was positive.

██ When interpreting a statute, we are compelled to ascertain and execute legislative intent and to interpret the statute in such a manner as to prevent absurdity and hardship and to favor public convenience. *Duneland School Corp. v. Bailey,* 701 N.E.2d 878, 881 (Ind.Ct.App.1998). We do not believe that the legislature intended through Ind.Code § 33–14–1–3 to give prosecutors unlimited license to conduct fishing expeditions in an attempt to discover chargeable crimes. Rather, we find that the statute requires that the information on which a subpoena is based have some indicia of reliability. While we do not mean to invoke the Rules of Evidence as the standard by which subpoenas should be measured, we do find in this case that hearsay within hearsay, originating from an unnamed and unverified source—indeed, a source that is unidentified in any way, much less one tending to support its veracity and reliability—does not constitute even marginally reliable information, and the deputy prosecutor exceeded his statutory authority by using that information as a basis for issuing a subpoena.

### II. Reasonableness

█ In addition to requiring probable cause, a subpoena duces tecum is subject to a reasonableness analysis. *Pollard,* 329 N.E.2d at 586. The standard of reasonableness necessarily connotes a fact-sensitive inquiry. *Id.* In the present case, the subpoena

directed the test lab to produce Oman's test results. The Ordinance provides, however, that employee drug test results are confidential and are to be maintained only in the employee's confidential file. Disclosure of results to individuals outside the department hierarchy cannot be made without the employee's written consent except under certain circumstances, including when disclosure is compelled by law or by judicial and administrative process. The State relies on this provision to support its acquisition of Oman's test results. Having found, however, that the subpoena which compelled the disclosure of the results was itself improper, we find that it does not constitute valid legal process such that the results could be released to the State without Oman's written consent. The subpoena therefore represented an unreasonable demand on the test lab because the lab did not have the legal authority to comply.

We note that had the subpoena been directed to Oman, the proper procedure would have been to move to quash the subpoena. Because he was denied this opportunity, the correct procedure, which he has followed, is to move to suppress evidence gathered from the improper subpoena.

### III. Use of Compulsory Drug Tests of Government Employees in Criminal Prosecutions

■ Even if we had found that the subpoena was proper, Oman's test results would be inadmissible on constitutional grounds. Supreme Court case law has established that drug testing of government employees is subject to Fourth Amendment analysis.[1] *Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Therefore, the State's use of Oman's test results was subject to Fourth Amendment restrictions before the subpoena was ever issued, and it remains subject to the Fourth Amendment regardless of the validity of the subpoena or of Fourth Amendment applicability to subpoenas.

In *Skinner,* the Federal Railroad Administration promulgated regulations that mandated blood and urine tests of employees who were involved in certain train accidents and authorized railroads to administer breath and urine tests to employees who violated certain safety rules. Railroad labor organizations challenged the regulations as unconstitutional, but the Supreme Court held that the government's interest in regulating the conduct of railroad employees to ensure safety presents special needs *beyond normal law enforcement* that may justify departures from the usual warrant and probable cause requirements. *Id.* at 620, 109 S.Ct. at 1415 (emphasis added). The Court repeatedly emphasized the non-prosecutorial function of the drug tests they were permitting. "The FRA has prescribed toxicological tests, *not to assist in the prosecution of employees,* but rather to prevent accidents and casualties in railroad operations that result from impairment of employees by alcohol and drugs." *Id.* at 620–621, 109 S.Ct. at 1415 (emphasis added). And later in the same opinion,

> The possession of unlawful drugs is a criminal offense that the Government may punish, but it is a separate and far more dangerous wrong to perform certain sensitive tasks while under the influence of those substances.... The Government may take all necessary and reasonable *regulatory steps* to prevent or deter that hazardous conduct.... The necessity to perform that *regulatory function* with respect to railroad employees engaged in safety-sensitive tasks, and the reasonableness of the system for doing so, have been established in this case.

*Id.* at 633, 109 S.Ct. at 1422 (emphasis added).

In *Nat'l Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the companion case to *Skinner,* the Court upheld compulsory drug testing of certain Customs Service employees. Again, the Court found that the use of illegal substances by such employees posed a substantial threat to public safety such that the tests were justified. And again, the Court emphasized the non-prosecutorial function of the tests by emphasizing that the

---

1. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961): The exclusionary rule in search and seizure cases adopted for federal prosecutions in *Weeks v. U.S.,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 must also be applied in criminal prosecutions in state courts.

drug testing policy in question provided that the results could not be turned over to any other agency, including criminal prosecutors, without the employee's written consent. *Id.* at 663, 109 S.Ct. at 1389. The Court went on to state:

> It is clear that the Customs Service's drug-testing program is not designed to serve the ordinary needs of law enforcement. Test results may not be used in a criminal prosecution of the employee without the employee's consent. The purposes of the program are to deter drug use among those eligible for promotion to sensitive positions within the Service and to prevent the promotion of drug users to those positions. These substantial interests ... present a special need that may justify departure from the ordinary warrant and probable-cause requirements.

*Id.* at 666, 109 S.Ct. at 1391. The Court clearly considered the prohibition against using test results in criminal prosecutions as a factor in determining and upholding the constitutionality of the Customs Service's policy.

This factor was further emphasized in *Chandler v. Miller*, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). In *Chandler*, Georgia passed a statute requiring candidates for state office to submit to and pass a drug test. Candidates challenged the constitutionality of the statute, and the Supreme Court held that it was unconstitutional. In so holding, the Court noted:

> To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing. But particularized exceptions to the main rule are sometimes warranted based on 'special needs, beyond the normal need for law enforcement.' When such "special needs"—*concerns other than crime detection*—are alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties. *Id.* at 313, 117 S.Ct. at 1301 (emphasis added).

Again the Court was careful to include language which denotes the bases on which drug testing policies might be constitutional as being something other than law enforcement.

Applying the above cases to the case before us, we find first that the Michigan City policy, like that in *Skinner,* is permissible due to the substantial risks to public safety resulting from the impairment of firefighters by the consumption of alcohol and drugs and the interest of the government in preventing or deterring such conduct. We also find, however, that use of that policy to pursue criminal prosecutions against employees is a violation of those employees' constitutional rights under the Fourth Amendment. It seems clear to us that through the above cases the Court has fashioned a very narrow public safety exception to usual Fourth Amendment requirements. As emphasized repeatedly in this opinion, the Court expressly did not extend the exception to the use of government-compelled drug tests in criminal prosecutions. We decline the invitation to do so now.

### CONCLUSION

The trial court erred in denying Oman's motion to suppress his drug test results.

Reversed.

STATON, J., concurs.

BROOK, J., concurs with separate opinion.

### BROOK, Judge, concurring

I agree with the majority that the deputy prosecutor exceeded his authority in issuing a subpoena duces tecum for Oman's drug test results and that the trial court erred in denying Oman's motion to suppress the results. I write separately, however, to express my profound concern about the possible erosion of Fourth Amendment protections that may result from prosecutors issuing subpoenas duces tecum without leave of court as mandated by IND. CODE § 33–14–1–3. On a related note, I believe that this Court should offer some practical guidelines for determining the "indicia of reliability" for the information on which a subpoena is based.

IND. CODE § 33–14–1–3 provides that upon receiving information of the commission

of a felony or misdemeanor, a prosecutor "shall cause process to issue *from a court* having jurisdiction to issue the same" (emphasis supplied). In *Rita v. State*, our supreme court held that IND. CODE § 33–14–1–3 applies only to pre-charge investigations:

> All the statute says is that if a prosecutor learns that a crime may have been committed, the prosecutor may, first, subpoena anyone in the jurisdiction who may know about the crime and, second, seek "process" leading to an arrest if the facts uncovered support that action. Thus, by its express terms the statute is not available at the post-indictment or post-information stage.

674 N.E.2d 968, 970 (Ind.1996).

Ind. Trial Rule 45(A)(2), which also applies to "criminal proceedings" to the extent permitted by Ind.Crim. Rule 21, provides in relevant part that a "clerk shall issue a subpoena, or a subpoena for the production of documentary evidence [duces tecum], signed and sealed but otherwise in blank, to a party requesting it or his or her attorney, who shall fill it in before service."[1] *See id.* at 970, n. 3. In the instant case, the prosecutor's office issued the subpoena duces tecum without seeking leave of court or even obtaining the signature of the clerk. Although the majority correctly finds the subpoena improper on other grounds, I find it troubling that the prosecutor was able to "cause process to issue" without following either the spirit or the letter of the law.

As the majority observes, this Court held in *Thompson* that "[t]he Fourth Amendment requirement of probable cause is applicable to subpoenas duces tecum only to the extent that the prosecutor in issuing the subpoena duces tecum may not act arbitrarily or in excess of his statutory authority." 479 N.E.2d at 1346. As a means of preventing prosecutors from acting arbitrarily or outside the scope of their authority in issuing subpoenas duces tecum, which was so vividly illustrated in the present case, I must indicate my strong preference for interpreting IND. CODE § 34–14–1–3 to require judges

or magistrates to review subpoenas for the mandatory "indicia of reliability" before they can be issued during criminal investigations. This interpretation would necessarily restrict the application of T.R. 45(A)(2) to civil cases.

After reviewing our holdings in *Thompson* and *Pollard*, it is apparent that a prosecutor need not have information sufficient to satisfy the requirements of "probable cause" when seeking to issue a subpoena duces tecum. *See id.; Pollard*, 329 N.E.2d at 586, 263 Ind. at 254 (Fourth Amendment probable cause requirement "is literally applicable only to warrants"). The majority concludes that we need not "invoke the Rules of Evidence as the standard by which subpoenas should be measured," but declines to offer criteria to which prosecutors and trial courts may refer in weighing the reliability (and inherently the sufficiency) of information used as the bases for subpoenas. Although heightened evidentiary standards are required for issuing search warrants, these standards may provide useful guidance to court officers in determining the reliability of information upon which subpoenas may be based.

In *Bigler v. State*, this Court confirmed its approval of the "totality of the circumstances" approach for magistrates when issuing search warrants:

> in determining whether an application for a search warrant is supported by probable cause, the task of the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that evidence of a crime will be found in a particular place.

602 N.E.2d 509, 514 (Ind.Ct.App.1992), *trans. denied* (1993), *citing Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The magistrate must consider the affidavit "in its entirety, giving significance to each relative piece of information and balancing the relative weights of all

---

1. It should be noted that Ind. Trial Rule 45(B) applies specifically to subpoenas for production of documentary evidence, but the relevant substantive and procedural requirements are found in T.R. 45(A).

the various indicia of reliability and unreliability attending the information." *Bigler,* 602 N.E.2d at 514. As a final consideration, "[t]he circumstances alleged in the affidavit need only lead a person of reasonable caution to believe that a crime had been committed." *Taylor v. State,* 615 N.E.2d 907, 910 (Ind.Ct. App.1993).

Here, the prosecutor's office issued a subpoena to the testing lab *sua sponte,* based upon indefensibly attenuated hearsay evidence. To prevent similar abuses of authority and to protect those who receive such subpoenas from unreasonable searches and seizures, whether of a direct or an indirect nature as in Oman's case, I again suggest that IND. CODE § 34–14–1–3 be interpreted to require judges or magistrates to review applications for subpoenas duces tecum in pre-charge criminal investigations.