STATE of Indiana, Appellant–Plaintiff,

v.

Darrell GUNN, Appellee–Defendant.

No. 71A04–9912–CR–543.

Court of Appeals of Indiana.

Sept. 21, 2000.

Karen M. Freeman–Wilson, Attorney General of Indiana, Randi E. Froug, Depu-

ty Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Michael P. Scopelitis, South Bend, Indiana, Attorney for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

The State of Indiana appeals the trial court's order granting Darrell Gunn's motion to suppress.

We affirm.

### ISSUE

Whether the results of a compulsory employee drug test obtained pursuant to a government employer's workplace drug testing policy may be used as evidence in a criminal prosecution of the employee.

### FACTS

In June 1999, Darrell Gunn was the Chief of the South Bend Police Department. South Bend had in place a contract ("the contract") between the city and the police department which provided in pertinent part as follows:

Any accident, where there is reasonable cause to believe that the same was caused by the Employee operating a city-owned vehicle and which causes $1,500.00 or more in property damage or causing injury to the Employee or other individual will be required to submit to a saliva, hair, urine, breath and/or blood test or any other similar testing method to determine if drugs, alcohol or [other] metabolites are in the Employee's system.

(R. 389).

According to the terms of the contract, if requested, the employee will sign a consent form authorizing the hospital to release the results of the test to the City. However, the employee is not required to waive any claim or cause of action under the law. In addition, any employee who refuses to submit to such tests for drugs or alcohol may be subject to discharge. The testing policies and procedures also set forth a specific range of consequences for positive test results. The consequences include specific references to various levels of departmental disciplinary actions.

On June 6, 1999, Gunn was involved in a collision with another vehicle while he was driving a city-owned vehicle. There was more than $1,500.00 in property damage. South Bend Police Captain Terry Young responded to the accident and immediately transported Gunn to St. Joseph's Regional Medical Center for the sole purpose of a breath test pursuant to the terms of the contract. Young told Gunn that he was being taken to the medical center to comply with the contract. Young did not observe any signs that Gunn was intoxicated. Therefore, he did not perform any field sobriety tests on Gunn, and he did not read Gunn the implied consent warning.

South Bend Police Department Division Chief Brent Hemmerlein heard about the accident and went to the medical center. Hemmerlein met with Gunn and asked him to submit to the drug test pursuant to the terms of the contract. Hemmerlein did not observe any signs that Gunn was intoxicated, and the only reason that he asked Gunn to submit to the test was to comply with the contract.

Hemmerlein and Gunn filled out and signed two forms used to administer and execute the contractual drug testing policy. The first form, entitled "City of South Bend Police/Fire Departments Drug/Alcohol Test Notification Form," provided a checklist of reasons for the testing, including the following options: "reasonable suspicion," "random," "post-accident" and "follow-up." (R. 397). Hemmerlein checked the "post-accident" box. (R. 397). The second form, entitled "Employer's Authorization for Treatment" identified the reason for the test as "post-accident." (R. 398). At the time that the test was admin-

istered, Hemmerlein believed that the test results would remain confidential. Testimony of the witnesses and hospital records do not indicate or support that Gunn appeared to have been intoxicated at the time of the accident or immediately thereafter.

Diane Buford administered Gunn's breathalyzer test. She was asked to administer the test pursuant to a work-place drug and alcohol policy. The only tests that Buford administers are employee tests pursuant to employment drug and alcohol testing policies. She does not have certification from the Indiana University School of Medicine Department of Toxicology to perform breathalyzer tests in Indiana. In addition, she administered the test on a breathalyzer machine which had not been certified by the Department of Toxicology.

Buford gave Gunn two breath tests. The first resulted in a blood alcohol content of .101, and the second resulted in a blood alcohol content of .106. When Hemmerlein received the results of the tests, he determined that a criminal investigation was necessary. Gunn was subsequently charged by the St. Joseph Prosecutor's Office with 1) operating a motor vehicle while intoxicated resulting in serious bodily injury to another person, a class D felony; 2) criminal recklessness, a class D felony; 3) criminal recklessness, a class A misdemeanor; 4) official misconduct, a class A misdemeanor; 5) driving while intoxicated, a class A misdemeanor; and 6) operating a motor vehicle while intoxicated with .10% or more by weight of alcohol, a class C misdemeanor.

Gunn filed a motion to suppress the test results which the trial court granted after a hearing. The State dismissed all of the charges and filed an appeal to this court.

## DECISION

The State contends that the trial court erred in granting Gunn's motion to suppress. We disagree.

■ The State bears the burden of demonstrating the constitutionality of the measures it used in securing information. *State v. Farber*, 677 N.E.2d 1111, 1113 (Ind.Ct.App.1997), *trans. denied.* On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion is contrary to law. *Id.* at 1113–1114. We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite of that of the trial court. *Id.* at 1114. We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Rather, we consider the evidence most favorable to the judgment. *Id.*

■ Drug testing of employees is subject to Fourth Amendment analysis. *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Therefore, the State's use of Gunn's test results is subject to Fourth Amendment restrictions.[1]

In *Skinner*, railroad labor organizers challenged the constitutionality of Federal Railroad Administration regulations which mandated blood and urine tests of employees who were involved in train accidents or who violated certain safety rules. The United States Supreme Court found that the government's interest in regulating the conduct of railroad employees to ensure safety presented special needs beyond law enforcement which might justify a departure from the usual warrant and probable cause requirements. 489 U.S. at 620, 109 S.Ct. at 1415.

However, the Court repeatedly emphasized the non-prosecutorial function of the tests it was permitting. Specifically, the

---

1. Gunn's argument focuses solely upon Fourth Amendment restrictions. He does not argue a violation of Indiana Constitutional prohibitions. See *Linke v. Northwestern School Corporation*, 734 N.E.2d 252 (Ind.Ct. App. 2000).

Court explained that the "FRA has prescribed toxicological tests, not to assist in the prosecution of employees, but rather to prevent accidents and casualties in railroad operations that result from impairment of employees by alcohol and drugs." 489 U.S. at 620–21, 109 S.Ct. at 1415. The Court further explained as follows in upholding the constitutionality of the regulations:

> The possession of unlawful drugs is a criminal offense that the Government may punish, but it is a separate and far more dangerous wrong to perform certain sensitive tasks while under the influence of those substances.... The Government may take all necessary and reasonable regulatory steps to prevent or deter that hazardous conduct.... The necessity to perform that regulatory function with respect to railroad employees engaged in safety-sensitive tasks, and the reasonableness for doing so, have been established in this case.

489 U.S. at 633, 109 S.Ct. at 1422.

In *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the companion case to *Skinner*, the Court upheld compulsory drug testing of certain Customs Service employees. The Court again explained that illegal substance use by such employees posed such a threat to public safety that such tests were justified. The Court also emphasized the non-prosecutorial function of the tests and pointed out that the drug testing policy provided that the test results could not be given to any other agency, including a criminal prosecutor, without the employee's written consent.

In upholding the constitutionality of the regulations, the court considered the prohibition against using the test results in a criminal prosecution. Specifically, the Court explained as follows:

> It is clear that the Customs Services' drug testing program is not designed to serve the ordinary needs of law enforcement. Test results may not be used in a criminal prosecution of the employee without the employee's consent. The purposes of the program are to deter drug use among those eligible for promotion to sensitive positions within the service and to prevent the promotion of drug users to those positions. These substantial interests ... present a special need that may justify a departure from the ordinary warrant and probable cause requirements.

489 U.S. at 666, 109 S.Ct. at 1391.

The prohibition against using test results in a criminal prosecution was also emphasized in *Chandler v. Miller*, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Therein, the Georgia legislature passed a statute requiring candidates for state office to submit to and pass a drug test. The candidates challenged the constitutionality of the statute. The Supreme Court explained as follows in finding that the statute was unconstitutional:

> To be reasonable under the Fourth Amendment, a search ordinarily must be based *on individualized suspicion of wrongdoing*. But particularized exceptions to the main rule are sometimes warranted based on 'special needs, beyond the normal need for law enforcement.' When such "special needs" – concerns other than crime detection – are alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties.

520 U.S. at 313, 117 S.Ct. at 1301 (emphasis added).

 Here, we find that the South Bend policy, like that in *Skinner*, is permissible under a federal constitutional analysis because of the substantial risks to public safety resulting from the impairment of police officers by the consumption of alcohol and drugs and the interest of the government in presenting or deterring such conduct. However, we also find that the use of that policy to pursue criminal

prosecutions against employees is a violation of those employees' Fourth Amendment rights.

In *Skinner, Von Raab,* and *Chandler,* the Supreme Court fashioned a very narrow exception to the usual Fourth Amendment requirements. However, the Court did not extend the exception to permit the use of such test results in a criminal prosecution of the employee. We decline to do so now.[2]

The trial court properly granted Gunn's motion to suppress, and we find no error.

Affirmed.

SULLIVAN, J., and MATTINGLY, J., concur.

---

**2.** We note that a recent Court of Appeals opinion discussing this issue, *Oman v. State,* 707 N.E.2d 325 (Ind.Ct.App.1999), was accepted on transfer by our Supreme Court on September 23, 1999. As a result, it cannot be cited as authority. However, the thorough analysis included in that opinion is informative and consistent with our conclusion in this case.