**STATE of Indiana, Appellant–Plaintiff,**

v.

**Mark J. MURRAY, Appellee–
Defendant.**

No. 36A05–0505–CR–262.

Court of Appeals of Indiana.

Nov. 17, 2005.

Transfer Denied Jan. 26, 2006.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellant.

Ryan W. Redmon, Montgomery, Elsner, & Pardieck, LLP, Seymour, for Appellee.

**OPINION**

RILEY, Judge.

## STATEMENT OF THE CASE

Appellant–Plaintiff, the State of Indiana (the State), appeals the trial court's Order granting Appellee–Defendant's, Mark J. Murray (Murray), Motion to Suppress Evidence.

We affirm.

## ISSUE

The State raises one issue on appeal, which we restate as: Whether the trial court erred in granting Murray's Motion to Suppress Evidence.

## FACTS AND PROCEDURAL HISTORY[1]

On the evening of May 13, 2004, Officer Gilbert Carpenter (Officer Carpenter) of the Seymour Police Department responded to a dispatch call that an individual was disorderly at the pool hall located at 110 North Chestnut Street, Seymour, Indiana. Upon arrival at the pool hall, Officer Carpenter spoke with William Perdue (Perdue) and David Brooks (Brooks). Perdue and Brooks told Officer Carpenter that Murray had gotten into a fight with Perdue at the "Thirteenth Floor," and then had walked across the street and began to cause a fight at the pool hall.[2] They de-

---

1. Oral arguments were held on October 25, 2005, at Vincennes University. We hereby congratulate and thank counsel for their ex- cellent presentations. We also thank Vincennes University for its hospitality.

2. Although the record does not disclose, the "Thirteenth Floor" appears to be a music

scribed Murray as a "heavy set male with reddish brown hair." (Appellant's App. p. 8). Perdue and Brooks told Officer Carpenter that after the fights, Murray drove away in a grey Volkswagen van. After speaking with Perdue and Brooks, Officer Carpenter radioed dispatch with Murray's physical appearance, the type of car he was driving, and information that he had been picking fights at the pool hall and at the Thirteenth Floor. In addition, Officer Carpenter radioed Officer Brian Moore (Officer Moore) of the Seymour Police Department, and "gave [him] a description of ... a light colored Volkswagen Van ... occupied by a male with reddish-brown hair, heavier set." (Transcript p. 20). Officer Carpenter also told Officer Moore that "he just need[ed] to speak with [Murray]." (Tr. p. 21).

Shortly thereafter, Officer Moore observed Murray's vehicle pull into a Wendy's parking lot and enter the drive-through. Officer Moore activated his emergency lights and directed Murray to pull his vehicle over to the curb. While questioning Murray on the driver's side of his vehicle, Officer Moore noticed that Murray's eyes were watery and bloodshot, his speech was slow and slurred, and there was a strong odor of alcohol on his breath. After failing several field sobriety tests, Officer Moore arrested Murray.

On May 14, 2004, the State filed an information, charging Murray with operating a vehicle while intoxicated as a Class D felony, Ind.Code § 9–30–5–3. On October 14, 2004, Murray filed a motion to suppress all evidence obtained as a result of the investigatory stop. On December 21, 2004, the trial court held a hearing on Murray's Motion, which was granted on January 6, 2005. Subsequently, on February 1, 2005, the State filed its Motion to Dismiss and Notice of Appeal.

The State now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

The State contends that the trial court erred in granting Murray's Motion to Suppress. Specifically, the State argues that Murray's rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution, were not violated because Officer Moore had reasonable suspicion to conduct an investigatory stop of Murray's vehicle. We disagree.

The State bears the burden of demonstrating the constitutionality of the measures it uses in securing information. *State v. Farber*, 677 N.E.2d 1111, 1114 (Ind.Ct.App.1997), *trans. denied*. On appeal from the grant of a motion to suppress the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *Id.* We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. We neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. *Denton v. State*, 805 N.E.2d 852, 855 (Ind.Ct.App.2004), *trans. denied*. The police may stop an individual for investigatory purposes if, based on specific, articulable facts, the officer has a reasonable suspicion that criminal activity is afoot. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). Such reasonable suspicion must

accessories store located at 111 North Chest-      nut Street, Seymour, Indiana.

be comprised of more than hunches or unparticularized suspicions. *Id.* That is, a police officer must be able to point to specific facts giving rise to a reasonable suspicion of criminal activity. *Id.* On review, this court considers whether the facts known by the police at the time of the stop were sufficient for a man of reasonable caution to believe that an investigation is appropriate. *Id.* The grounds for such a suspicion must be based on the totality of the circumstances. *Id.*

The State now argues that reasonable suspicion of Murray's criminal activity does not have to be based upon Officer Moore's personal knowledge, but rather, Officer Moore can rely on the collective knowledge of the Seymour Police Department regardless of whether it is conveyed to him. Therefore, the State asserts that any knowledge that Officer Carpenter may have had in regards to Murray's criminal activity was imputed to Officer Moore before he made the investigatory stop of Murray's vehicle. In support of their collective knowledge argument, the State relies on *Utley v. State,* 589 N.E.2d 232, 236 (Ind.1992), *cert. denied,* 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142, where our supreme court recognized that "as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant." *See also, Rios v. State,* 762 N.E.2d 153, 163 (Ind.Ct.App.2002); *Cutter v. State,* 646 N.E.2d 704, 713–14 (Ind.Ct.App.1995), *trans. denied.*

■ Although we applaud the State's novel argument, the cases relied upon are clearly distinguishable from the case at hand. In *Utley, Rios,* and *Cutter,* collective knowledge was imputed to the officer

signing the probable cause affidavit *before* an actual search warrant was sought. Here, however, the record reveals that Officer Moore received no information from Officer Carpenter, that Murray had been or was involved in criminal activity before Officer Moore made his investigatory stop. Officer Carpenter merely radioed other units that he "needed to speak with the subject." In order to rely on collective knowledge, the knowledge sufficient for reasonable suspicion must be conveyed to the investigating officer before the stop is made. The collective knowledge cannot be relied upon after the fact. To hold otherwise would allow police officers to conduct investigatory stops before having any reasonable suspicion of criminal activity. Thus, because Officer Carpenter failed to convey his knowledge of criminal suspicion to Officer Moore before the investigatory stop, Officer Moore conducted his investigatory stop without specific facts giving rise to a reasonable suspicion of criminal activity. *See Denton,* 805 N.E.2d at 855. As such, we cannot conclude that the trial court's ruling was contrary to law.[3] *See Farber,* 677 N.E.2d at 1114.

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in granting Murray's Motion to Suppress Evidence.

Affirmed.

BAKER, J., and NAJAM, J., concur.

---

**3.** Since we hold that the conduct at issue violated the Fourth Amendment of the United States Constitution, we do not need to consider the State's Indiana Constitution claim.