Sarail **JAMERSON**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee.**

No. 49A02–0608–CR–779.

Court of Appeals of Indiana.

July 31, 2007.

---

William F. Thoms, Jr., Thoms & Thoms, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Appellant–Defendant, Sarail Jamerson, challenges his conviction and sentence for Carrying a Handgun Without a License as a Class A misdemeanor.[1] Upon appeal, Jamerson claims the trial court erred in admitting certain evidence in violation of his Fourth Amendment rights.

We reverse and remand.

On June 18, 2006, Officers Jeremy Gates, Michael Douglass, and Jerry Townsend of the Indianapolis Police Department received a request from a county detective over dispatch to locate Sarail Jamerson, described to be a black male who was reportedly sitting in a vehicle behind a specific residence on East 34th Street.[2] The report from dispatch indicated that Jamerson was wanted in connection with a carjacking incident at Lafayette Square Mall. According to Officer Gates, individuals living at the residence in question had notified authorities with the information that Jamerson was there. Gates subsequently discovered an individual matching the reported description sitting

inside a car parked near an alley[3] behind a house at 2140 East 34th Street.[4] Officer Townsend, who was on the scene approximately a minute prior to Officers Gates's and Douglass's arrival, approached the car from the alley in back of the house. According to Officer Gates, he and Officer Douglass approached the car from the front of the house by cutting across the front lawn. Upon approaching the vehicle, an officer requested identification, and Jamerson, who was sitting in the passenger seat, handed his identification to Officer Gates. It appeared that Jamerson and another individual sitting in the driver's seat were about to begin eating a plate of food. Jamerson stepped outside of the vehicle. Officer Gates testified that he informed Jamerson he was being detained for investigative purposes until the officers heard back from the county detective who had made the initial report. Jamerson asked whether this detention was going to "take a while." Tr. at 20. Officer Gates did not recall indicating that it would, but he permitted Jamerson and his companion to sit back down inside the car and eat their plates of food while they waited for dispatch to relay the information to the reporting detective and for the detective to respond. Officer Gates testified that Jamerson and his companion had stood outside the car approximately three to five minutes before they were permitted to get back into their car. Approximately thirty to forty-five seconds after Jamerson and

---

1. Ind.Code § 35–47–2–1 (Burns Code Ed. Repl.2004); Ind.Code § 35–47–2–23 (Burns Code Ed. Repl.2004).

2. Officer Gates testified the officers were dispatched to the 2300 block of East 34th Street. Officer Gates also testified that they were dispatched to a specific residence, which according to Officer Townsend's testimony, was located at 2140 East 34th Street.

3. The exact location of the car, specifically whether it was in the driveway or in the alley,

was disputed at trial. The trial court found the car was parked in the alley near the residence at 2140 East 34th Street but not immediately behind such property.

4. No explanation is provided for the inconsistency in the information over dispatch indicating Jamerson would be at a residence in the 2300 block of East 34th Street, and the discovery of Jamerson behind a residence at 2140 East 34th Street, which is not in the 2300 block.

his companion got back into their car, Officer Gates observed a black handgun protruding in plain view from underneath Jamerson's car seat. Officer Gates indicated to the other officers that Jamerson and his companion needed to be secured, so the officers removed them from the car, handcuffed them, and then Officer Douglass read Jamerson his Miranda rights. Officer Douglass testified that he asked Jamerson whether the gun was his, and Jamerson stated that it was. Both Officers Gates and Townsend testified that they also heard valid gun permit to carry the weapon, and Jamerson indicated he did not. The gun was subsequently entered into evidence as State's Exhibit 1.

Jamerson was charged on June 19, 2006 with carrying a handgun without a license. The matter proceeded to a bench trial on August 10 and August 17, 2006, after which Jamerson was found guilty as charged. The trial court sentenced Jamerson to 365 days in Community Corrections Jail with 275 days suspended to probation. Jamerson filed his notice of appeal on September 15, 2006.

The sole issue Jamerson presents for our review is whether testimony regarding the discovery of the gun and the gun itself constituted inadmissible evidence under Fourth Amendment principles. Specifically, Jamerson contends the officers did not have the necessary reasonable suspicion to detain him in an investigatory stop.

Our standard of review of rulings on the admissibility of evidence is the same whether the challenge is made by a pretrial motion to suppress or by a trial objection. *Ackerman v. State,* 774 N.E.2d 970, 974 (Ind.Ct.App.2002), *trans. denied.* We look for substantial evidence of probative value to support the trial court's decision. *Swanson v. State,* 730 N.E.2d 205, 209 (Ind.Ct.App.2000), *trans. denied.* We consider the evidence most favorable to the court's decision and any uncontradicted evidence to the contrary. *Id.*

■ The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable searches and seizures. *Jefferson v. State,* 780 N.E.2d 398, 403 (Ind.Ct.App.2002). For purposes of determining whether a defendant's rights against such searches and seizures were violated, we must determine which level of police investigation occurred. There are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *State v. Augustine,* 851 N.E.2d 1022, 1025 (Ind.Ct.App.2006) (citing *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App. 2000)). First, the Fourth Amendment requires that an arrest or detention that lasts longer than a short period of time be justified by probable cause. *Id.* Second, pursuant to Fourth Amendment jurisprudence, the police may briefly detain an individual for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id.* The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen involving neither an arrest nor a stop. *Id.* Such is a consensual encounter and does not implicate the Fourth Amendment. *Id.*

■ The parties agree that the level of police investigation involved in this case was an investigatory stop. As Officer Gates indicated during trial, upon locating and identifying Jamerson, he informed Jamerson he was "being detained for investigative purposes until [they] could hear back from the county detective." Tr. at 20. Reasonable suspicion to justify an investigatory stop must be based upon specific and articulable facts known to the officer at the time of the stop that lead the

officer to believe that " 'criminal activity may be afoot.' " *Finger v. State,* 799 N.E.2d 528, 533–34 (Ind.2003) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Facts supporting the reasonable suspicion necessary to justify an investigatory stop must satisfy " 'some minimum level of objective justification' " for the temporary detention of a person to be valid. *Bridgewater v. State,* 793 N.E.2d 1097, 1099–1100 (Ind.Ct.App. 2003) (quoting *Reeves v. State,* 666 N.E.2d 933, 936 (Ind.Ct.App.1996)), *trans. denied.* In order to establish reasonable suspicion, law enforcement officers need not have the level of suspicion necessary for probable cause, but they must have more than an inchoate and unparticularized suspicion or hunch. *State v. Belcher,* 725 N.E.2d 92, 94 (Ind.Ct.App.2000), *trans. denied.* Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances. *Bridgewater,* 793 N.E.2d at 1100. " '[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' " *Finger,* 799 N.E.2d at 535 (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

In denying Jamerson's motion to suppress, the trial court stated the following:

"Officer is responding along with a couple of partners is responding to this radio transmission that says that individual with the specific description was a suspect, person of interest, interest wanted to be questioned regarding a carjacking and they're also given a specific location along with a specific description. Officer testified credibly you understand the defendant matched the description. Excuse me, officer then travels through a path that is clearly marked in defendant's exhibit A, a path where there are no fences are shown and he travels through that path from the front of the house to the alley way. And the picture clearly shows again there's no fences there, it's, it looks like brick, a brick path with no obstruction and case law is pretty clear that officers may travel where ever the public may go for purpose of the entrance of the structure. And clearly if you look at this picture there is a, what appears to be an entrance way at the back portion of the house. It's on the side towards the back of the home. And it's clearly permissible under current case law for the officer to travel through that path way to go directly to the alley where it has been testified the vehicle was. Again I then take a look at defendant's exhibit B and I'm looking at where the officer marked and this evidence is controverted but the officer marked the vehicle was at while the defendant and his buddy sat in it and based upon my observations of the pictures I can't say that it was even on that property. In fact based upon this picture it looks like it was away from the property. Nevertheless it was in an alley way and alley ways normally are not owned by the property owners. Alley ways are just that, they're roads and they're not owned by the property owners so the court finds that the contact was made outside of the defendant's property but in the event that the contention is that it was the officers were properly there because they got to the alley way through this walkway that was open, clearly open to the public. Now this wasn't a consent, this wasn't a consensual encounter by any stretch of the imagination. The officers were clearly on an investigation. They were clearly trying [sic] the individual responsible for the carjacking. So they identified the defendant. The defendant matches the name of the individual that the, that the detective was looking for and the officer says we told them that we were going to detain them until the detective made his way either to the site or contacted the

officers. And that's what occurred. They were allowed to eat their food. And during the course, before, this is key, before they were cuffed, before they were physically detained, they were in their car, with their food getting prepared, getting ready to eat their food, that's just an inference I'm drawing. And then the officer observed the handgun. So we've got officers conducting an investigation of someone just committed a carjacking. We've got a handgun that's protruding, that's clearly in plain view. That is more than enough reason to cause the officers to detain these individuals for their safety. The motion to suppress is denied." Transcript at 30–33.

Following trial, the court expanded upon its reasoning in denying the motion to suppress: "[Y]ou have officers responding to a detective about an individual involved in a carjacking. They converge upon this vehicle and they ID the defendant. It's clearly enough reasonable suspicion that this defendant committed, may have committed some crime. And so they detain the defendant." Tr. at 125.

Jamerson claims that the police officers did not have the reasonable suspicion necessary to conduct an investigatory stop. Jamerson argues that the officers were relying upon an anonymous tip and that without sufficient indicia of reliability or independent corroboration of the criminal activity alleged, an investigatory stop was not justified under the Fourth Amendment. The State responds that the officers were acting upon the police department's collective knowledge that Jamerson was wanted in connection with a crime at Lafayette Square Mall and further, that the officers were responding to information relayed to them by identifiable infor-

mants at a known location, namely the address where Jamerson was ultimately found.

■ As a general rule, an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid investigatory stop. *Beverly v. State,* 801 N.E.2d 1254, 1261 (Ind.Ct.App.2004), *trans. denied.* If an anonymous tip is " 'suitably corroborated,' " however, it may bear " 'sufficient indicia of reliability' " to provide the reasonable suspicion necessary to justify an investigatory stop. *Id.* (quoting *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)). Reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida,* 529 U.S. at 272, 120 S.Ct. 1375.

In considering the totality of the circumstances, we first observe that the tip indicating Jamerson's location reportedly[5] came from the residents of the home where Jamerson was ultimately located. Although this tip was not entirely anonymous, as it allegedly came from the residents of the home, it did nothing more than to identify a determinate person. While a tip's tendency to identify a determinate person and predict future behavior may support its reliability and the corresponding reliability of its assertion of criminality, here there was never any assertion of criminality in the tip, so the fact that Jamerson was, as described, sitting in a car in the back of a house at a certain address does nothing to buttress a claim of reasonable suspicion. *See Washington v. State,* 740 N.E.2d 1241, 1245–46 (Ind.Ct. App.2000), *trans. denied.* The State made no argument at trial, nor does it claim upon appeal, that the tip from the resi-

---

**5.** Officer Gates admitted he had no firsthand knowledge regarding the initial tip identifying Jamerson's location.

dents of the house included any assertion of illegality. *See id.*

In assessing the circumstances, we further consider the report from dispatch and its claim of illegality in determining whether there was reasonable suspicion adequate to justify an investigatory stop. According to Officers Gates, Douglass, and Townsend, the report over dispatch merely indicated that they were to locate Jamerson "in reference to a carjacking" which had allegedly occurred at Lafayette Square Mall. Tr. at 6. Officer Gates testified that he did not know who the detective was who had relayed this information over dispatch, that the detective never responded or came to the scene, that he was not in touch with the detective, and that he had no firsthand knowledge of any conversations this detective had had. Officers Douglass and Townsend similarly had no knowledge of the identity of the detective or his basis for making the report, nor does it appear they had any further contact with him after hearing his report over dispatch. While the report over dispatch did make an assertion of illegality, such assertion was not supported by any specific and articulable facts. Indeed the message over dispatch asserted only that Jamerson was wanted in connection with an alleged crime of carjacking at Lafayette Square Mall. Yet no facts accompanied such assertion, and the detective making the assertions never followed up with his claims and has yet to be identified.[6]

■ While information obtained by one investigating officer may be relied upon by other law enforcement officials who are called upon to assist in the investigation of a suspect, the officer who obtains the information must possess the requisite reasonable suspicion to conduct the investigation in the first place. *See Heffner v. State*, 530 N.E.2d 297, 300 (Ind.1988) (indicating that law enforcement officers, in making an arrest, may rely upon information obtained by another law enforcement officer so long as the officer who obtained the information had probable cause to make an arrest); *State v. Murray*, 837 N.E.2d 223, 226 (Ind.Ct.App.2005) ("In order to rely on collective knowledge, the knowledge sufficient for reasonable suspicion must be conveyed to the investigating officer before the stop is made.").

The State points to *Johnson v. State*, 710 N.E.2d 925, 927–28 (Ind.Ct.App.1999), in suggesting that officers may act upon information relayed by an unidentified investigating officer for purposes of making an investigatory stop. Contrary to the facts in this case, however, the reporting officer in *Johnson* observed the shooting causing him to make a report, indicated the location of the shooting, and described the perpetrator, all factors which pointed to the defendant and established reasonable suspicion to conduct an investigatory stop. *Id.* Here the reporting officer provided no specific and articulable facts such as these to link Jamerson to the alleged carjacking at Lafayette Square Mall. Indeed, Jamerson was not even in the vicinity of Lafayette Square Mall when the officers found and detained him.

6. Seeking to locate a named individual in connection with alleged criminal activity does not constitute an assertion that the individual was engaged in the criminal activity. It is possible that the dispatch message involved a witness to the carjacking. We recognize that Officer Gates, after initially testifying that Jamerson was wanted "in reference to" the carjacking, subsequently referred to the unsubstantiated possibility that Jamerson was a "carjacking suspect," which is probably not an unlikely conclusion by an officer who has been told to locate an individual. Tr. at 9, 37. Nevertheless, as we have concluded upon finding no specific and articulable facts to demonstrate Jamerson was "connected" to the carjacking, we similarly observe the lack of specific and articulable facts to investigatorily detain him on the basis that he was a "suspect."

We further observe that upon initially stopping Jamerson and inquiring into his identity, the officers pointed to no statements or behaviors tending to corroborate Jamerson's link to the alleged carjacking. Indeed, Jamerson was permitted to sit back inside his car and have his dinner while the officers waited for the unidentified reporting officer to call them or arrive on the scene. Had they not discovered the gun under Jamerson's seat during the investigatory detention,[7] it is unclear how long they were prepared to wait on the scene, extending the term of Jamerson's detention, all on the grounds of the report over dispatch unsupported by any particularized facts or circumstances.

■ We conclude the State has failed to demonstrate that Jamerson's reported link to the alleged illegal activity was anything more than an unparticularized hunch on the part of the unnamed reporting officer. We therefore find that there was no adequate showing of reasonable suspicion necessary to justify the investigatory stop which led to the discovery of the handgun beneath Jamerson's seat and his subsequent conviction for possession of a handgun without a license. *See Murray*, 837 N.E.2d at 225–26 (finding no reasonable suspicion to justify an investigatory stop of an individual where basis of stop was that one police officer had told another officer he "needed to speak" with the individual). Accordingly, we conclude the admission into evidence of the handgun and testimony regarding its discovery was in error.[8]

The judgment of the trial court is reversed, and the cause is remanded with instructions to vacate Jamerson's conviction.

ROBB, J., and VAIDIK, J., concur.

---

7. We note that in denying Jamerson's motion to suppress, the court relied upon the finding of the gun to support its finding of reasonable suspicion sufficient to justify an investigatory stop. In fact, the officers testified that Jamerson was being detained for investigatory purposes before they discovered the gun.

8. The State argues that Jamerson has waived any challenge to the handgun because he only objected to its admission on foundational grounds. In fact, in arguing his motion to suppress, Jamerson specifically mentioned the handgun in arguing that "all evidence" should be suppressed. Tr. at 29. After such motion was denied, Jamerson lodged a "continuing objection to the search of the car and seizure of the weapon." Tr. at 38. We conclude Jamerson properly preserved this issue for appeal.