**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 16 2014, 10:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DJUAN FACESON,                                )
                                              )
    Appellant-Defendant,             )
                                              )
        vs.                     )    No. 49A02-1405-CR-305
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Plaintiff.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable David M. Seiter, Master Commissioner
Cause No. 49G20-1310-FC-66731

**December 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Djuan Faceson appeals his conviction for carrying a handgun without a license, as a Class C felony, following a bench trial. He presents a single issue for our review, namely, whether the trial court abused its discretion when it admitted into evidence the handgun police found on his person when he was arrested. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On October 10, 2013, Marion County Sheriff Deputies Drew Butner and Christopher Beushausen were working part-time security detail at Keystone North Apartments in Indianapolis ("the complex"). They were wearing their full Sheriff's Deputy uniforms and patrolling on foot. The complex provides government-subsidized housing, which means there are restrictions on who can live there, and residents are required to have identification with them at all times. The deputies' duties as private security guards for the complex included checking people's identification cards to make sure they were residents. And the deputies were tasked with keeping people out of the complex who were included on a "trespass list." Tr. at 39.

During their patrol that day, the deputies saw two men attempt to enter two or three different buildings, but they were unable to open the doors, which were locked. Only residents have keys to the doors of the buildings, so the deputies assumed that the men were not residents. The deputies were walking westbound toward a substation located in the complex when they made contact with the two men, who were walking southbound.

When the deputies were "right up next to" the two men and "almost hand in hand," the two men "started heading in an opposite direction," and Deputy Butner said to

2

them, "Hey, how is it going?  Do you live out here?"  Id. at 44.  The two men stopped, responded that they were "visiting friends," and Deputy Butner asked "if [they] had ID[s]" and whether he could see them, and the two men immediately provided their identification cards.  Id. at 45.  Deputy Butner checked the men's names against the trespass list and discovered that one of the men, Faceson, was on the trespass list.  The deputies arrested Faceson.  During a search incident to the arrest, the deputies found a handgun on Faceson's person.  Faceson did not have a license to carry a handgun.

The State charged Faceson with carrying a handgun without a license, as a Class C felony, and trespass, as a Class D felony.[1]  The State ultimately dismissed the trespass charge.  Prior to trial, Faceson moved to suppress "all evidence recovered from and all testimony related to such evidence obtained from the warrantless stop, search[,] and seizure" of Faceson, which the court held in abeyance.  Appellant's App. at 37.  Following a bench trial,[2] the trial court denied Faceson's motion to suppress and entered judgment of conviction for carrying a handgun without a license, as a Class C felony. The trial court sentenced Faceson to three years of home detention.  This appeal ensued.

## DISCUSSION AND DECISION

Faceson contends that the deputies violated his right to be free from an unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.  In particular, Faceson maintains that the deputies detained and questioned him without reasonable suspicion

---

[1]  The State initially charged Faceson with two Class A misdemeanors, but each offense was enhanced because of prior convictions for carrying a handgun without a license and trespass.

[2]  The trial court incorporated the suppression hearing into the bench trial.

3

that he was engaged in or about to be engaged in criminal activity. The State contends that the deputies' interaction with Faceson was consensual and did not implicate Faceson's rights under either the federal or state constitution.[3] We agree with the State.

Faceson is appealing from the trial court's admission of the evidence following a completed trial. A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. Washington v. State, 784 N.E.2d 84, 587 (Ind. Ct. App. 2003). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. We will not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. Cole v. State, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007).

In Clark v. State, 994 N.E.2d 252, 260-62 (Ind. 2013), our supreme court set out the applicable law as follows:

> The Fourth Amendment to the U.S. Constitution protects persons from unreasonable search and seizure by prohibiting, as a general rule, searches and seizures conducted without a warrant supported by probable cause. U.S. Const. amend. IV; Berry v. State, 704 N.E.2d 462, 464-65 (Ind. 1998). As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception. Mapp v. Ohio, 367 U.S. 643, 649-55 (1961) (extending exclusionary rule to state court proceedings). It is the State's burden to prove that one of these well-delineated exceptions is satisfied. Berry, 704 N.E.2d at 465.

* * *

> Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. Finger v. State, 799 N.E.2d

---

[3] Faceson concedes that "[t]he analysis of the legality of an investigative stop is the same under both the Fourth Amendment and Article 1, Section 11." Appellant's Br. at 4.

4

528, 532 (Ind. 2003). Consensual encounters in which a citizen voluntarily interacts with an officer do not compel Fourth Amendment analysis. Id. Nonconsensual encounters do, though, and typically are viewed in two levels of detention: a full arrest lasting longer than a short period of time, or a brief investigative stop. Id. The former of these requires probable cause to be permissible; the latter requires a lower standard of reasonable suspicion. Id.

* * *

Determining whether this was a consensual encounter or some level of detention "turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." Id. (citing California v. Hodari D., 499 U.S. 621, 628 (1991)). The test is objective—not whether the particular citizen actually felt free to leave, but "whether the officer's words and actions would have conveyed that to a reasonable person." Hodari D., 499 U.S. at 628 (citing United States v. Mendenhall, 446 U.S. 544 (1980)). Examples of facts and circumstances that might lead a reasonable person to believe that he or she was no longer free to leave could include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Overstreet v. State, 724 N.E.2d 661, 664 (Ind. Ct. App. 2000) (citing Mendenhall, 446 U.S. at 554), trans. denied.

Here, Deputy Butner testified that he and Deputy Beushausen were patrolling the complex when they observed Faceson and another man try, unsuccessfully, to open the doors to two or three apartment buildings. The deputies did not change their direction of travel but converged with the path of the two men, who then changed their direction of travel before coming into physical contact with the deputies. The two men were in close range when Deputy Butner asked the two men whether they lived there and whether he could see their identification, and the two men stopped and produced their identification cards.

At trial, Faceson testified that Deputy Butner said, "Stop where you are right there." Tr. at 106. And he testified that he did not feel free to leave. In the probable

5

cause affidavit, Deputy Beushausen stated that he and Deputy Butner "stopped both males and asked if they lived in the complex." Def. Ex. A. But both Deputy Butner and Deputy Beushausen testified that neither of them told the men to stop or otherwise interfered with their movement before the two men voluntarily stopped to talk to the deputies, who had merely asked whether they could see their identification cards. In denying Faceson's motion to suppress and admitting the evidence obtained in the search incident to his arrest, the trial court found that the deputies did not "stop" Faceson and that Faceson had voluntarily presented his identification card. Tr. at 127. We will not reweigh the evidence on appeal.

Still, Faceson contends that

[a] reasonable person in Mr. Faceson's shoes would not have felt free to ignore Deputy Butner and walk away without giving him the identification. Deputies Butner and Beushausen were in full uniform patrolling the complex. Upon seeing the officers, Mr. Faceson and his companion attempted to turn their direction of travel to avoid the police but the officers approached them and stopped them—either by specifically telling them to stop or by hailing them and asking if they lived there. It is of no moment the officers did not draw weapons or use physical force to stop Mr. Faceson. The officers asserted their authority by calling out to the two men when the two started to change their direction to avoid the police.

Appellant's Br. at 5.

But, looking at the factors set out in Overstreet, the evidence supports the trial court's admission of the evidence. There is no evidence of a "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 724 N.E.2d at 664. Faceson and the other man stopped after Deputy Butner asked them whether they lived at the complex,

6

and they willingly turned over their identification cards after Deputy Butner asked whether he could see them. Deputy Butner immediately found Faceson's name on the trespass list and arrested him. We hold that the brief encounter between the deputies and Faceson was consensual and did not implicate his rights under the Fourth Amendment or Article 1, Section 11.

In the alternative, even if the encounter were not deemed consensual, it was a valid Terry stop.

> . . . [A police officer does not] need probable cause to detain [someone] if he [i]s conducting merely a brief investigatory stop falling short of traditional arrest. This sort of brief detention, commonly called a Terry[] stop, permits an officer "to stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity 'may be afoot' even if the officer lacks probable cause." Armfield v. State, 918 N.E.2d 316, 319 (Ind. 2009) (quoting United States v. Sokolow, 490 U.S. 1, 7, (1989)). "Such reasonable suspicion must be comprised of more than hunches or unparticularized suspicions." State v. Murray, 837 N.E.2d 223, 225-26 (Ind. Ct. App. 2005), trans. denied.
>
> In other words, the stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417, (1981). "[T]he totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417-18; see also Armfield, 918 N.E.2d at 319 (quoting State v. Bulington, 802 N.E.2d 435, 438 (Ind. 2004)). In assessing the whole picture, we must examine the facts as known to the officer at the moment of the stop. Lyons v. State, 735 N.E.2d 1179, 1183 (Ind. Ct. App. 2000), trans. denied. We review findings of reasonable suspicion de novo. Id. This is necessarily a fact-sensitive inquiry.

Clark, 994 N.E.2d at 263-64.

Here, again, Deputy Butner testified that he and Deputy Beushausen were patrolling the complex, located in a high-crime area, when they observed Faceson and

another man try, unsuccessfully, to open the doors to two or three apartment buildings. The deputies concluded that the men were not residents of the complex, because residents have keys to unlock the doors to their respective buildings. The deputies did not change their direction of travel but converged with the path of the two men, who then changed their direction of travel before coming into physical contact with the deputies. The two men were in close range when Deputy Butner asked the two men whether they lived there and whether he could see their identification, and the two men stopped and produced their identification cards. Deputy Butner immediately found Faceson's name on the no-trespass list and arrested him.

We hold in the alternative that, under the totality of the circumstances, the deputies had reasonable suspicion that criminal activity was afoot and engaged in a very brief investigatory encounter with Faceson before his arrest for trespass. The trial court did not abuse its discretion when it admitted evidence obtained in the course of the search incident to Faceson's arrest.

In sum, whether the encounter was consensual or was an investigatory stop, the encounter was lawful and the evidence derived therefrom was admissible at Faceson's trial.

Affirmed.

BAILEY, J., and PYLE, J., concur.