# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 27 2015, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Darrel Warren,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 27, 2015

Court of Appeals Cause No.
49A02-1409-CR-597

Appeal from the Marion Superior Court
Cause No. 49F10-1310-CM-65273

The Honorable Linda E. Brown, Judge
The Honorable Steven Rubick, Magistrate

**Barnes, Judge.**

# Case Summary

Darrel Warren appeals his conviction for Class A misdemeanor carrying a handgun without a license. We reverse.

# Issue

Warren raises one issue, which we restate as whether the trial court properly admitted evidence obtained during his encounter with police officers.

# Facts

On October 3, 2013, Officer Aaron Helton of the Indianapolis Metropolitan Police Department was dispatched to a call about a person holding a gun on porch on East 10th Street in Indianapolis. Officer Helton was given a description of a person wearing a hat, jeans, and a black shirt. When Officer Helton and another officer arrived at the scene, there were four intoxicated men on the porch drinking from a bottle. Officer Helton did not know whose house it was and did not see a person with a gun. Officer Helton walked up to the porch steps and told the men to keep their hands where he could see them because of the nature of the dispatch. At that point, Officer Helton noticed that Warren's clothing matched the description in the dispatch and saw him make "a move toward his right pocket; not like an aggressive move like someone is going to hurt you, but kind of like a, avoiding away . . . ." Tr. p. 13. Officer Helton approached Warren and patted him down. Officer Helton found a handgun in Warren's pocket. Warren did not have a valid license for the gun.

The State charged Warren with Class A misdemeanor carrying a handgun without a license. Warren moved to suppress evidence obtained during the encounter, and the trial court denied the motion. At the trial, the evidence was admitted over Warren's objection, and Warren was convicted. He now appeals.

## Analysis

Warren contends the trial court erroneously admitted evidence obtained during his encounter with Officer Helton. We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion, which occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Bentley v. State*, 846 N.E.2d 300, 304 (Ind. Ct. App. 2006).

"Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do." *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). Consensual encounters in which a citizen voluntarily interacts with a police officer do not compel Fourth Amendment analysis. *Id.* Nonconsensual encounters do and typically fall into two categories. *Id.* The first is a full arrest, which requires probable cause. *Id.* The second is a brief investigative stop, which requires a lower standard of reasonable suspicion. *Id.*

At issue here is whether Officer Helton's initial encounter with Warren was consensual, as the State asserts, or an investigatory stop, as Warren claims.

"Determining whether this was a consensual encounter or some level of detention turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." *Id.* (quotation omitted). The test is objective—whether the officer's words and actions would have conveyed to a reasonable person that he or she was not free to leave. *Id.*

[8]     Warren compares his case to *Crabtree v. State*, 762 N.E.2d 241, 244-46 (Ind. Ct. App. 2002), in which the officer left his car, began walking toward Crabtree, shined a flashlight on him, and shouted "get your hands up" and, when Crabtree failed to comply, he was immediately apprehended and handcuffed. We concluded that "a reasonable person in Crabtree's position would not feel that he was free to leave" and that Crabtree was subjected to an investigatory stop. *Crabtree*, 762 N.E.2d at 246.

[9]     On the other hand, the State directs us to *Bentley*, in which two police officers responded to a dispatch about suspicious people in a car in a parking lot. *Bentley*, 846 N.E.2d at 303. One officer approached the car and asked the four occupants about their presence in the parking lot and asked for identification. *Id.* at 306. The other officer approached the car and asked the occupants to keep their hands where he could see them and, when one of the passengers did not comply, the officers ordered all of the occupants out of the car. *Id.* at 307. We concluded that, what began as a consensual encounter, escalated into a seizure when the occupants were ordered out of the car. *Id.* We also determined that the request for the occupants to keep their hands where the

officers could see them was a consensual encounter. We reasoned that the officers did not draw their weapons, speak in an intimidating fashion, or otherwise restrict the occupants from leaving the area. *Id.*

[10] We believe this case is distinguishable from *Bentley* because Warren was not in a car and able to leave the scene. Instead, when Officer Helton, while accompanied by another officer, stood at the bottom of the porch and instructed the men on the porch to keep their hands where he could see them and not to move around, a reasonable person would believe that he or she was not free to leave. Thus, the protections of the Fourth Amendment are implicated here. *See, e.g., United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994) (holding that police cars parked in front of and behind the defendant's car with lights shining through the windows and asking the occupants to put their hands in the air where the officer could see them would lead a reasonable person to believe that he or she was not free to leave even though the officer's prudential procedures were fully justified by concerns for police safety).

[11] The fundamental principle upon which a *Terry* stop is based is that the officer has reasonable suspicion to believe that criminal activity has occurred or is about to occur or, in the words of *Terry,* that "'criminal activity may be afoot.'" *Holly v. State*, 918 N.E.2d 323, 325 (Ind. 2009) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). "'Such reasonable suspicion must be comprised of more than hunches or unparticularized suspicions.'" *Clark*, 994 N.E.2d at 263 (quoting *State v. Murray*, 837 N.E.2d 223, 225-26 (Ind. Ct. App. 2005), *trans. denied*). Taking into account the totality of the circumstances or

the whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Id.* at 264. In making this determination, we must examine the facts as known to the officer at the moment of the stop. *Id.* Findings of reasonable suspicion are reviewed de novo, and this is necessarily a fact-sensitive inquiry. *Id.*

[12] The State contends that Officer Helton had reasonable suspicion to believe criminal activity may have been afoot based on the fact that he was responding to a report of a man holding a gun on a porch, the people on the porch were intoxicated, and the officers were outnumbered. We fail to see how the men's intoxication and the fact that the officers were outnumbered would lead an officer to objectively conclude that criminal activity was afoot. Moreover, as Warren points out, there is no indication that the Officer Helton was informed that the person was doing anything illegal with the gun.[1] The evidence simply does not establish that Officer Helton had reasonable suspicion to believe that criminal activity had occurred or was about to occur when he instructed the occupants of the porch to keep their hands where he could see them.

[13] Even if we were to conclude that the initial request to keep their hands where Officer Helton could see them was part of a consensual encounter, the State concedes, "When the officer put his hands on Warren, the encounter became a

---

[1] Although Officer Helton testified that Mr. Bush owned the home and called 911, he testified he did not know whose house it was before he arrived and he inquired at the scene to determine whose house it was. There is no indication that this inquiry occurred prior to Officer Helton's encounter with Warren.

seizure . . . ." Appellee's Br. p. 6. If we were to consider what Officer Helton observed following his request of the occupants to keep their hands where he could see them, including, as the State points, that Warren did not cooperate with the request and that he matched the description of the man with the gun, we remain unconvinced that these additional factors created reasonable suspicion that criminal activity was afoot. We reach this conclusion because Warren's possession of a gun under the circumstances known to Officer Helton at the time was not necessarily illegal. As Warren asserts, "There was no report of the person pointing the gun, firing it, or being ineligible to possess it." Appellant's Br. p. 7. The evidence presented by the State did not establish that Officer Helton had reasonable suspicion of criminal activity at the time he searched Warren. Accordingly, the trial court improperly overruled Warren's objection to the admissibility of the evidence obtained during the search.

## Conclusion

[14] Because Officer Helton did not have reasonable suspicion of criminal activity either upon his instruction for the occupants of the porch to keep their hands where he could see them or upon his frisk of Warren, the trial court improperly overruled Warren's objection to the admissibility of the evidence obtained during the frisk. We reverse.

[15] Reversed.

Riley, J., and Bailey, J., concur.